VAN DOREN and others *vs.* STICKLE and wife and others.

1. Notes given by a purchaser of the partnership property of an insolvent firm, on account of the purchase money, made payable to the order of the wife of one of its members, and by her husband given to her, are void in her hands as against creditors of the firm.

2. The claim that they were given to the wife by her husband, on account of moneys advanced by her to him, not sustained.

On final hearing, on pleadings and proofs.

*Mr. H. C. Pitney,* for complainants.

*Mr. A. W. Cutler,* for defendants.

THE CHANCELLOR.

The complainants are creditors of the late firm of Stiers & Ryerson, which was composed of Samuel G. Stiers and

Ambrose F. Ryerson, who, in 1868, were lumber dealers in Boonton, in the county of Morris, and in that year became indebted to the complainants, on partnership account, to a very considerable amount. On the 14th of October, 1868, they sold all their partnership property to John J. Van Ness, who, with one Jaques, assumed the payment of the sum of $2839.56 to the complainants, for the price of so much of the lumber then remaining on hand as had been purchased by Stiers & Ryerson of the complainants. After crediting this amount, there still remained due the complainants, from Stiers & Ryerson, a balance of more than $1600.

Van Ness · gave to Stiers & Ryerson, on account of the purchase money, two promissory notes of the above date, payable respectively at two and four years after date, with interest, to the order of Sarah Stiers, (wife of Samuel G. Stiers,) one for $500, and the other for $600.

These notes, which were made by Van Ness, with James H. Hopler and Hartman Van Ness as sureties, were delivered to Mrs. Stiers by her husband. In 1869 the latter died, and letters of administration of his estate were issued to his widow. On the 22d of July, in that year, the complainants made a claim, under oath, against his estate, of the amount due them from Stiers & Ryerson. On the 15th of June previous, the administratrix filed accounts in the Orphans Court of Morris county, by which it appeared that the estate was entirely insolvent.

In May, 1869, the complainants recovered judgment on their claim, in the Morris Circuit Court, against Ryerson, as surviving member of the firm, for $1669 as damages, and $43.55 costs ; and on the 26th day of the same month, caused to be issued thereon a writ of *fieri facias de bonis et terris*, which was returned in October following, by the sheriff of the county of Morris, wholly unsatisfied for want of property whereon to levy.

The administratrix of Stiers refusing to charge herself with the two notes delivered to her by her husband, as above mentioned, the complainants made an effort in the Orphans

Court, by means of exceptions to her account, to compel her to do so, or to account for the amount thereof as part of the estate of the decedent, but the court disallowed the exceptions for want of jurisdiction, without prejudice however, to the right of the exceptants to pursue their remedy in any other court.

Having failed in this attempt, the complainants filed their bill in this court against her, in her individual capacity and as administratrix, and her present husband, Washington Stickle, and Ryerson.

The bill prays that the notes may be declared and decreed to be assets of the partnership of Stiers & Ryerson, and that the making thereof to her was fraudulent and void as against the complainants as creditors of the firm, and that the complainants are entitled to have the notes transferred to them, to be collected and applied towards payment of their debt. It also prays for the appointment of a receiver and for an injunction. An injunction was granted and a receiver appointed.

The defendants answered. The answer of Stickle and wife sets up a claim on the part of the latter to the notes, on the ground that they were given to her by her late husband, on account of a debt due from him to her for money lent by her to him, to the amount of about $1500. It also claims that by the assumption of Van Ness and Jaques to pay the sum of $2839.56 above mentioned, to the complainants, the entire debt of Stiers & Ryerson to them was paid off. There can be no question, however, that the amount claimed by the complainants to be due to them from the late firm of Stiers & Ryerson, is actually and fairly due.

The evidence of the alleged debt on which Mrs. Stickles' claim to the notes in controversy is based, so far from being satisfactory, is the very reverse. Her statements in regard to it, and her account of it, by no means establish it. She alleges that she obtained about half of the amount she claims to have loaned her husband, from her mother in three gifts, but

from the testimony of her brother and sisters, it seems evident that her mother was not possessed of the means to make these gifts.

Her statement, made on oath in the examination before the Orphans Court, as to how and where she got the money, is wholly at variance with, and casts discredit on her testimony and answer in this cause, on that subject. Before that court, she testified that she got the money from her mother's estate, six years ago the preceding February, (that examination took place in August, 1870,) and loaned it to her husband when she got it; that some of it he used when he went to the oil regions, and some on the Beavertown property, a farm he purchased in April, 1860, from William Mains. She said she thought he took $300 to the oil regions. She testified that it was after he bought the property of Mains, she let him have the money; she could not tell how long after, two or three years; that it was six years ago, a year or two after her mother died; that she had it in the house until she let her husband have it; that she got the money six months after her mother's death, and that her brother George paid her the money, $1100, at the house of her sister, Mrs. Beavers, in Hunterdon county.

In her answer she says she received from her mother and her mother's estate, the sum of $600, or thereabouts, which she lent to her husband, who used it in the purchase of the Beavertown property, and afterwards she advanced to her husband other money she had earned by her needle and other means.

In her testimony in this suit, she says she got $215 of the money from her mother, in 1840, and that it was used by her husband in paying for the lumber for a house he had built on property he then owned at Port Murray, in Warren county; that a short time before her mother died, (her mother died about 1864) she got $200 more from her mother, "fourteen or fifteen years ago," (about 1857), and lent that to her husband; that she was then living on the farm at Beavertown, and since that, she had received $300 from her mother; when

she received this last money, her husband was gone away, either to Chattanooga or the oil regions, and that he went to Chattanooga after the war ; that her husband had other money from her—the proceeds of the sale of butter and onions raised on her husband's farm, and the price of a cow belonging to her, sold by him, and the avails of her labor in sewing.

Her brother, George Moore, testifies that he never paid her, as she swears, $1100, for her share of her mother's estate, but only about $55, which was, as it clearly appears, all that her share amounted to. Nor had she, as she admits, any voucher for the money she so claims to have lent her husband, or for any part of it, except a memorandum kept by him, as she says, in a small book, which she calls a pocket day-book, and this, she says, has been lost, so that she cannot produce it.

I deem it unnecessary to pursue the consideration of her testimony further. It is enough to say that the alleged loan to her husband is not proved. She cannot lawfully hold these notes to her individual use. The debt they represent and secure is part of the partnership assets.

The complainants have, with diligence, pursued their remedy, and have exhausted it. · Stiers' estate is utterly insolvent. They are entitled to the benefit of these notes, and the security upon them.

There will be a decree that Mrs Stickle and her husband assign the notes to the receiver, and that she pay to the latter the interest received by her upon them ; the proceeds of the notes, with the interest, to be applied towards payment of the complainants' debt. The complainants are entitled to costs.